[No. G009790. Fourth Dist., Div. Three. June 28, 1991.]

LUBOMIR J. VALENTA, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant;
H. RICHARD BIXBY, Claimant and Respondent.

COUNSEL

Lubomir J. Valenta, in pro. per., for Plaintiff and Appellant.

H. Richard Bixby, in pro. per., for Claimant and Respondent.

No appearance for Defendant.

OPINION

**MOORE, J.**—Lubomir J. Valenta appeals an order denying his motion to terminate a claim of lien by his former attorney, H. Richard Bixby. The trial

court ruled Bixby was entitled to a lien for the reasonable value of his services against the judgment in an underlying case. Valenta contends the court lacked jurisdiction because the validity of the lien must be decided in an independent action. ■■■■ We agree and reverse.[1]

## FACTS

In 1981, Valenta filed an action for wrongful termination against the Regents of the University of California and various members of the faculty and administration of the University of California at Irvine Medical School. In April 1986, he retained Bixby, who represented him through a successful eight-day trial and obtained a judgment of $866,000 in November 1986.

Following entry of judgment, the defendants appealed and Valenta cross-appealed seeking reinstatement. Bixby associated another attorney to handle the appeal. In a letter to the new attorney, dated November 25, 1986, Valenta confirmed the association of attorney agreement as follows: ". . . we have agreed, together with Mr. Bixby, that . . . you . . . alone, [will] handle the appeal and cross-appeal procedures for the flat percentage of recovery, the difference between Mr. Bixby's 30% of the total recovery and 50% of the total recovery, i.e. 20% of the total recovery plus interest accrued from the date of the original judgement. [¶] . . . We understand that if the retrial is granted, you and Mr. Bixby would retry it, as he perfectly well knows the subject matter and he has done an excellent job on the trial and his absence at the retrial would be a handicap to our case. [¶] We further specifically understand that you and your firm alone would handle the cross-appeal procedures and that the total amount of recovery would be divided as follows: [¶] 1. cost advanced to us as we are presently totally ruined [¶] 2. 30% to Mr. Bixby of the total and final verdict plus accrued interest [¶] 3. 20% to you and your firm for re-tiral [*sic* ] and re-appeal procedures, from the final amount of verdict plus accrued interest [¶] 4. Any cost would be paid by us, from the final amount of the verdict . . . ." On August 13, 1987, Valenta substituted Bixby out of the case.

After his termination as attorney of record, Bixby notified Valenta's new attorney that he had a lien on the proceeds of the judgment in the amount of

[1]In view of our holding, we do not address Valenta's remaining contentions that the court erred because there was no written retainer agreement, the oral agreement was entered into after entry of judgment, and the agreement was ambiguous and did not sufficiently indicate the intent of the parties to grant a lien. We note, however, that his contention the trial court lacked jurisdiction to hear the motion for reconsideration because she had been disqualified for prejudice pursuant to Code of Civil Procedure section 170.6 was without merit. A challenge under section 170.6 is untimely where, as here, it was filed between the issuance of an order by the court and a hearing on a motion to reconsider that same order. (*Buchanan* v. *Buchanan* (1979) 99 Cal.App.3d 587, 594-595 [160 Cal.Rptr. 577].)

$287,430, plus interest and costs of $1,000. Valenta objected to the claim of lien and notified Bixby both personally and through counsel that he would not recognize a lien.

Valenta declared *"each* and *every fee agreement . . . null* and *void,* rescinded and invalid," based on numerous "acts and failures committed during the trial," failure to take the matter to appeal, an alleged unlawful attachment of Valenta's IBM computer, printer, word processor and software, and Bixby's "[f]ailure to execute *written* retainer/contingent fee/lien agreement . . . at the time you agreed to represent me . . . ." Valenta's attorney also noted the objection to the lien, stating "I am sure you know that under Business and Professions Code, section 6147(b) [which requires a contingency fee agreement to be in writing], Dr. Valenta is within his rights in regarding your fee agreement as void and that you are, therefore, entitled to collect only a *reasonable fee* for the services you rendered to him."

On appeal of the underlying judgment, this court reduced the award pursuant to *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], but otherwise affirmed it in its entirety. Thereafter, Bixby filed a notice of reaffirmation of claim of lien for reasonable attorney's services rendered and costs advanced.

On April 5, 1990, Valenta filed a motion to terminate the lien for reasonable attorney's fees and the possessory lien on his property. Bixby opposed the motion, contending he agreed to represent Valenta for a one third contingent fee, with no agreement to pursue any appeal, after learning from Valenta that he had had four different attorneys since the filing of the complaint on May 21, 1981, and that, as of February 1986, no at issue memorandum had been filed and a trial date had not been obtained. He stated it was his custom and practice over 34 years to have a contingent fee in writing, but that he had given the complete file to Valenta at his request, without making a copy of the file for his records. Bixby concluded that "[u]nless Valenta's conscience starts bothering him, I will probably never see the fee contract, however, I am perfectly willing to accept the reasonable value of the services I rendered."

The trial court denied the motion to terminate the liens on May 11, 1990. On June 7, Valenta brought a motion to disqualify the trial judge for prejudice under Code of Civil Procedure section 170.6. That same day, he brought a motion to reconsider the denial of his motions to terminate the liens. Both motions were denied.

By order filed July 3, the court ruled as follows: "IT IS HEREBY ORDERED that two motions of Plaintiff Dr. Valenta to terminate the charging and

posessory [*sic* ] liens and to dissolve/strike the claim of lien for reasonable value of attorney's services are denied, and that . . . Bixby is entitled to lien for 'reasonable Value of Attorney's Services' against the judgment in this case. [¶] IT IS FURTHER ORDERED that . . . Bixby has to enforce his lien for reasonable value of attorney's services in a separate action . . . ." Valenta timely filed this appeal from the denial of his motions to terminate the liens and from the denial of his motion for reconsideration.

### DISCUSSION

In his reply brief, Valenta relies upon *Hansen* v. *Jacobsen* (1986) 186 Cal.App.3d 350, 357 [230 Cal.Rptr. 580], and contends the only matter which could have been decided by the lower court was whether Bixby could file a notice of lien in a pending action. The lower court went beyond that issue, and not only concluded Valenta's motion to terminate the lien should be denied, but also that Bixby had a lien for reasonable attorney's fees against the underlying judgment. In so doing, the court exceeded its jurisdiction.[2]

Bixby concedes in his respondent's brief that the lower court lacked jurisdiction to terminate or create a lien, noting "Before Bixby filed a 'Notice of Lien' . . . the court clearly did not have jurisdiction over the fee dispute between Bixby and Valenta. It is equally clear that neither the act of filing the 'Notice of Lien' nor the filing of the motion to strike that lien created the necessary jurisdiction." We agree.

*Hansen* v. *Jacobsen, supra,* 186 Cal.App.3d 350 is controlling. There, an attorney and his law firm filed a "notice of lien" in a pending action. Their clients filed a motion to strike the "lien claim," arguing it had never been perfected. The attorney and his law firm opposed the motion, contending that under *Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 792 [100 Cal.Rptr. 385, 494 P.2d 9], a discharged attorney's cause of action for fees under a contingency fee contract does not accrue or ripen until the happening of the contingency, and that, therefore, the lien claim should not be stricken as being unperfected. The trial court granted the motion to strike the lien claim stating that an independent action for enforcement of a lien was required. (186 Cal.App.3d at pp. 352-353.)

The Court of Appeal affirmed. The court discussed the apparent confusion between a "lien" and a "notice of lien" as follows: "In the case at bench the

---

[2]The court's ruling is thus appealable. It is axiomatic that a judgment entered by a court which lacked jurisdiction is void and must be reversed. (*Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 366 [217 P.2d 951]; *Conservatorship of Romo* (1987) 190 Cal.App.3d 279, 282-283 [235 Cal.Rptr. 377].)

trial court and counsel at times referred to appellants' filing a 'lien' or 'lien claim' rather than a *notice* of lien. The trial court's belief that the filing of a lien in the pending action was improper was correct. However, we hold that filing a notice of lien is permissible, and that the court below erred to the extent that it held otherwise." (186 Cal.App.3d at p. 357.)

Clearly, the practice of filing a notice of lien in a pending action is permissible, and even advisable. Our holding is in no way intended to disapprove of Bixby's informal written notice and his notice of reaffirmation of the lien while the underlying action was pending. (*Hansen* v. *Jacobsen, supra*, 186 Cal.App.3d at p. 358; see also *Cetenko* v. *United California Bank* (1982) 30 Cal.3d 528, 533, fn. 5 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657].) However, while a previously discharged attorney may file a notice of lien in a pending action, an independent action is required to establish the existence and amount of the lien and to enforce it. (*Hansen* v. *Jacobsen, supra*, at p. 356; *Bandy* v. *Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 230, 235 [126 Cal.Rptr. 890].)

It is apparent, then, that the lower court lacked jurisdiction to enter an order beyond that permitting the filing of a notice of lien in the pending action. To the extent that it denied Valenta's motions to terminate a lien and purportedly granted Bixby a lien for the reasonable value of his services against the judgment in the underlying case, the court erred.

#### DISPOSITION

The order is reversed. In the interest of justice, the parties shall bear their own costs on appeal.

Sills, P. J., and Crosby, J., concurred.