[No. E024452. Fourth Dist., Div. Two. July 17, 2000.]

ZZYZX AARON CURTIS, a Minor, etc., Plaintiff, v.
ESTATE OF JOHN WILLIAM FAGAN, Deceased, et al., Defendants;
GARY J. BRYANT, Movant and Appellant;
GREGORY M. LLOYD, Objector and Respondent.

**COUNSEL**

Gary J. Bryant, in pro. per., for Movant and Appellant.

Law Office of Shea Conway and Shea Conway for Objector and Respondent.

**OPINION**

**HOLLENHORST, Acting P. J.**—As part of a minor's compromise, the trial court granted Gregory M. Lloyd's request for quantum meruit attorney

fees incurred in his capacity as minor's former attorney. Minor's present attorney, Gary J. Bryant, appeals, contending the court lacked jurisdiction to award such fees. He further challenges the sufficiency of the evidence to support the amount of fees awarded to Lloyd.

## FACTS AND PROCEDURAL HISTORY

The father of minor Zzyzx Aaron Curtis died on September 18, 1995, as a result of injuries sustained in an accident occurring on August 12, 1995. On February 26, 1996, Bryant filed a wrongful death action on behalf of Michelle Jessop (Jessop action), minor's mother and guardian ad litem. A few days earlier, on February 20, 1996, Lloyd had filed a separate complaint on behalf of John M. Clayton for personal injuries arising out of the same automobile accident that had resulted in the death of minor's father. Clayton's lawsuit was dismissed on August 14, 1996. Thereafter, Lloyd filed a notice of attorney's lien in the Jessop action. According to Lloyd, in September 1995, Jessop had retained him to represent her as guardian ad litem for Zzyzx.

Following settlement of the Jessop action, on June 10, 1998, Bryant filed a petition for compromise of the minor's claim, in which he requested attorney fees, expenses and costs totaling $35,000. On June 18, Lloyd filed another lien in the Jessop action, this time asserting a quantum meruit claim as the minor's former attorney and requesting attorney fees of $12,500 and costs of $2,333.36.[1]

On October 2, 1998, the court approved the compromise and ordered Bryant and Lloyd to "contact the clerk in Department 1 to obtain a hearing date for determination of allocation, if any, of attorney fees and reimbursement of advances." On November 6, the court awarded Bryant and Lloyd each attorney fees in the amounts of $17,500. Upon Bryant's motion for reconsideration of the attorney fees awarded to Lloyd, the trial court reduced Lloyd's award of attorney fees to $12,500, and increased Bryant's award of attorney fees to $22,500. The order on the motion for reconsideration was

---

[1] In his declaration in support of his request for attorney fees, Lloyd attests that approximately one month after retaining Bryant to prosecute the minor's action (Jessop apparently first retained Bryant in August 1995), Jessop became dissatisfied with Bryant's representation and retained Lloyd's services "for prompt investigation and prosecution." This occurred one day after minor's father had died. Notwithstanding the fact that Lloyd had already been retained to represent Clayton, Lloyd purportedly gave minor's action "complete and undivided attention," which he claimed culminated in the tendering of defendants' $100,000 insurance policy. However, as Bryant points out, and Lloyd acknowledges, Jessop had returned to Bryant and had re-retained him to represent her and her son prior to the filing of the wrongful death action; thus, Lloyd did not file the wrongful death action on behalf of minor—Bryant did, thereby becoming the sole attorney of record.

filed on December 14, 1998. On December 22, Bryant moved for a new trial as to the attorney fee award to Lloyd on the grounds of insufficiency of the evidence and that the decision is against the law. The court denied Bryant's motion. He appeals contending (1) the trial court lacked jurisdiction to award Lloyd any amount of attorney fees, and (2) even if the court did have such jurisdiction, the amount awarded is not supported by substantial evidence.

## JURISDICTION

As he did in his motions for reconsideration and new trial, Bryant relies on *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011 [43 Cal.Rptr.2d 717] (*Bell*) for his contention that the trial court did not have jurisdiction to award Lloyd any attorney fees in the present action. Lloyd responds that the trial court correctly rejected Bryant's argument in ruling that it had authority to determine the amount of attorney fees under *Goldberg v. Superior Court* (1994) 23 Cal.App.4th 1378 [28 Cal.Rptr.2d 613] (*Goldberg*) and finding *Bell* distinguishable. We agree.

*Goldberg* involved a fee dispute between Dr. Goldberg, a chiropractor, who had treated several minor plaintiffs for personal injuries sustained in a bus accident, and the minors' guardians ad litem, with whom Dr. Goldberg had a contract specifically giving him lien rights as to any recovery. The guardians ad litem objected to Dr. Goldberg's claimed fees and attempted to litigate the reasonableness of those fees by using the Probate Code section 3601[2] approval hearing. Dr. Goldberg specially appeared only at that hearing, objected to the jurisdiction of the superior court purportedly hearing the issue, and then both appealed and petitioned for a writ of mandate with respect to a subsequent order of that court purporting to find the reasonable value of his fees.

Division One of this district granted the writ of mandate directing the trial court to vacate its order concerning the reasonable value of the doctor's services. In so doing, the court noted that "[t]he plain language of [section 3601] permits the court to make an order authorizing 'such reasonable *expenses*' as it 'shall approve and allow' to be paid from the settlement proceeds going to the minor. [Citation.] Because medical expenses, costs and attorney fees are expressly included within the scope of the order, and these charges are generated by doctors, lawyers and other providers who are not

---

[2]All further undesignated statutory references are to the Probate Code. Section 3601 provides as relevant: "(a) The court making the order or giving the judgment referred to in Section 3600, as a part thereof, shall make a further order authorizing and directing that such reasonable expenses (medical or otherwise and including reimbursement to a parent, guardian, or conservator), costs, and attorney's fees, as the court shall approve and allow therein, shall be paid from the money or other property to be paid or delivered for the benefit of the minor . . . ."

parties to the action, we construe the statute as empowering the court to determine reasonable *expenses* to be paid to Dr. Goldberg from the settlement proceeds even though he was not a party. [¶] . . . [T]he statute gives the court broad power to issue an order 'authorizing and directing that such reasonable *expenses* . . . as the court . . . approve[s] or allow[s] . . . [to] be paid from the money' delivered for the benefit of the minor. [Citation.] To authorize such a payment, the court is obliged to decide both what is reasonable *and* how much it will allow. The breadth of the language and absence of any restrictions on the approval process suggest the court can make the determination any number of ways. Among other things, it may determine 'reasonable' from the perspective of the total settlement and 'allow' *expenses* by a reduction of all charges on a pro rata basis, by picking and choosing between *expenses*, or by some other variation." (*Goldberg, supra*, 23 Cal.App.4th 1378, 1382, italics added and original italics.)

Relying on the quoted language, Lloyd asserts that *Goldberg* entitles him to recover the attorney fees he claimed in his lien. Bryant disagrees, arguing that Lloyd has ignored the remainder of the opinion in which the *Goldberg* court clarified the power of a superior court under section 3601. Bryant quotes: "Our conclusion that the court has authority to determine what *expenses* are paid out of the minors' settlement and what are not does not mean the court has jurisdiction to decide what Dr. Goldberg 'deserves.' Section 3601 expressly permits the court to decide what reasonable *expenses* it will allow to be paid from the minor's settlement. *It does not permit the court to decide the reasonable value of a practitioner's services.* [¶] The reasonableness and propriety of the contract amount is another question entirely, *a question that must be resolved by a separate action.* It is not a matter to be decided under section 3601 and certainly not by the irregular mini-trial we saw in this case. In short, section 3601 is exclusively concerned with allowing *expenses* to be paid from the minor's settlement. It has no effect on the claims Dr. Goldberg may have against the parents or lawyers under the contracts or otherwise." (*Goldberg, supra*, 23 Cal.App.4th 1378, 1383, italics added, fn. omitted.) This language creates a distinction between allowable *expenses*, which the court may determine in a section 3601 hearing, and the reasonable *value* of a practitioner's services, which may not be determined at such a hearing and instead must be resolved by a separate action.

Relying on the above language, the *Bell* court expressly pointed out this distinction. In that case, Bell entered into an agreement with a law firm (the Shine firm) to work on a minor's personal injury action (the Rekers action); Bell did not have a fee agreement with the guardian ad litem. Bell worked on the case but was subsequently substituted out. Following the substitution,

Bell filed a lien for attorney fees and costs. (*Bell, supra,* 36 Cal.App.4th 1011, 1014-1015.) Although the Shine firm requested information about the quantum meruit fees claimed by Bell, Bell refused to provide the requested information. Following the settlement of the Rekers action, the Shine firm petitioned for a minor's compromise. The petition stated that Bell had waived his asserted attorney fee quantum meruit claim. (*Id.* at pp. 1015-1016.)

Bell filed responsive pleadings as well as a separate declaratory relief action in a different county, seeking an adjudication of the value of his efforts in the Rekers action. At the hearing on the minor's compromise, Bell's counsel argued that the trial court did not have jurisdiction to make an order with respect to the attorney fees requested by Bell and that that issue had to be decided in a separate action. The trial court disagreed and reached the merits of Bell's lien claim for quantum meruit attorney fees, denying such fees in their entirety.[3] (*Bell, supra,* 36 Cal.App.4th 1011, 1017-1018.) Thereafter, a demurrer to Bell's declaratory relief action was sustained without leave to amend on grounds of res judicata and collateral estoppel. (*Id.* at pp. 1018-1019.)

On appeal from the declaratory relief action,[4] the *Bell* court held that Bell did not have a valid lien with respect to the Rekers action because he did not have a direct contract with the client, and that even if he did have a valid lien, the trial court in the Rekers action did not have jurisdiction to determine the reasonable amount of attorney fees to be awarded to Bell.[5] (*Bell, supra,* 36 Cal.App.4th 1011, 1019.) The court explained that while sections 3600[6] and 3601[7] and Code of Civil Procedure section 372,[8] may authorize a probate court to enter an award for reasonable attorney fees in a minor's

---

[3]However, the court did grant reimbursement of the costs of all attorneys involved, including almost $17,000 to Bell. (*Bell, supra,* 36 Cal.App.4th 1011, 1016, fn. 5.)

[4]Bell did not appeal the Rekers action.

[5]Lloyd points out that Bell did not have a contract with the guardian ad litem, while he claims he had a fee agreement with Jessop. We note that the *Bell* court specifically considered the fact that Bell did not have a direct contract with the guardian ad litem, but nevertheless concluded that even if he did, the trial court still would not have had jurisdiction to award the attorney fees claimed. The *Goldberg* court likewise disregarded the fact that Dr. Goldberg had a contract with the guardian ad litem in concluding that Dr. Goldberg's claim for the reasonable value of his services could not be resolved in a section 3601 proceeding.

[6]Section 3600 provides as relevant: "This article applies whenever both of the following conditions exist: [¶] (a) A court approves (1) a compromise of, or the execution of a covenant not to sue on or a covenant not to enforce judgment on, a minor's disputed claim or (2) approves a compromise of a pending action or proceeding to which a minor or incompetent person is a party or (3) gives judgment for a minor or incompetent person."

[7]See *ante,* footnote 2.

[8]Code of Civil Procedure section 372 provides, as relevant: "(a) When a minor . . . is a party, that person shall appear either by a guardian or conservator of the estate or by a

personal injury action, those sections do not give the court "jurisdiction over any fee dispute between two attorneys quarreling over division of the fee to be awarded, much less one involving an attorney who had no agreement with the guardian at litem in the first place." (*Bell, supra,* 36 Cal.App.4th at p. 1020.) Noting that such a distinction had recently been made clear in *Goldberg,* the *Bell* court repeated the rule that although section 3601 expressly allows the court to decide what reasonable *expenses* it will allow to be paid out of the minor's settlement, it does *not* permit the court to decide the reasonable *value* of a practitioner's services, i.e., what the practitioner *deserves.* (*Bell,* at p. 1021.) The *Bell* court concluded that the rule enunciated in *Goldberg* applied and that the trial court in the Rekers action had acted in excess of its jurisdiction.[9] (*Bell,* at p. 1021.)

The problem with Bryant's argument and the decisions in *Goldberg* and *Bell* is that they misinterpret the clear language in section 3601. " '[A] court is to construe a statute " 'so as to effectuate the purpose of the law.' " ' [Citation.] 'In addressing this issue we begin, as always, with the language of the statute itself.' [Citation.] 'Under familiar rules of construction, words in a statute must be given the meaning they bear in ordinary usage [citation]; the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible [citation].' [Citation.] Moreover, 'every word and phrase of a statute should be given significance in order to effect the legislative intent.' [Citation.] 'In attempting to ascertain legislative intent when construing a statute we presume that the Legislature did not intend absurd results. [Citation.]' [Citation.] 'Accordingly, if a statute is susceptible to more than one interpretation, we must adopt the reasonable meaning and reject that which would lead to an unjust and absurd result.' [Citation.]" (*In re Daniel M.* (1993) 16 Cal.App.4th 878, 882 [20 Cal.Rptr.2d 291].)

Here, section 3601, subdivision (a), provides: "The court making the order or giving the judgment referred to in Section 3600, as a part thereof,

---

guardian ad litem appointed by the court in which the action or proceeding is pending, or by a judge thereof, in each case. . . . The . . . guardian ad litem so appearing for any minor . . . shall have power, with the approval of the court in which the action or proceeding is pending, to compromise the same, to agree to the order or judgment to be entered therein for or against the ward or conservatee, and to satisfy any judgment or order in favor of the ward or conservatee or release or discharge any claim of the ward or conservatee pursuant to that compromise. Any money or other property to be paid or delivered pursuant to the order or judgment for the benefit of a minor, . . . . shall be paid and delivered as provided in Chapter 4 (commencing with Section 3600) of Part 8 of Division 4 of the Probate Code."

[9]The *Bell* court ultimately held that Bell was barred by the doctrines of collateral estoppel and res judicata from collaterally attacking the court's ruling in the Rekers action and affirmed the judgment. (*Bell, supra,* 36 Cal.App.4th 1011, 1021-1026.)

*shall make a further order authorizing and directing that such reasonable expenses* (medical or otherwise and including reimbursement to a parent, guardian, or conservator), *costs, and attorney's fees, as the court shall approve and allow therein,* shall be paid from the money or other property to be paid or delivered for the benefit of the minor or incompetent person." (Italics added.)

According to the unambiguous language in the statute, the trial court is empowered to approve and allow payment of reasonable expenses, costs, and attorney fees. Approval of such expenses, costs or fees requires a determination of the validity of the claims made or liens filed for reimbursement of such expenses, costs or fees. For example, if the trial court denies an attorney's lien for legal fees, then it has made the determination that the lien is not valid. Conversely, if the lien is not denied, then the court must have approved it. However, approval of the lien necessarily requires a determination of the reasonable amount of fees which will be allowed. This is so because the order directing payment of the lien provides a specific dollar amount which the court has determined is reasonable. Such amount may not be that which was stated in the lien.

Turning to the case law interpreting section 3601, subdivision (a), we disagree with the *Goldberg* and *Bell* opinions to the extent that they distinguish the determination of the reasonable value of services from the determination of what expenses will be allowed. They conclude that while "[s]ection 3601 expressly permits the court to decide what reasonable expenses it will allow to be paid from the minor's settlement[, i]t does not permit the court to decide the reasonable value of a practitioner's services." (*Goldberg, supra,* 23 Cal.App.4th 1378, 1383.) However, such conclusion in *Goldberg* is not supported by any authority other than the *Bell* court's interpretation of the language in the statute. (*Ibid.*)

Looking at *Bell,* the appellate court relied upon the *Goldberg* decision and the decisions in *Valenta v. Regents of University of California* (1991) 231 Cal.App.3d 1465, 1470 [282 Cal.Rptr. 812] [wrongful termination action where an attorney who was discharged by his client filed a notice of lien in the case claiming entitlement to reasonable fees and costs advanced]; *Hansen v. Jacobsen* (1986) 186 Cal.App.3d 350, 356 [230 Cal.Rptr. 580] [while a previously discharged attorney may file a notice of lien in the pending personal injury action, he must bring an independent action to establish the amount of the lien and to enforce it]; *Bandy v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 230, 234 [126 Cal.Rptr. 890] [attorney employed under a contingent fee contract providing for a lien upon the anticipated recovery may not intervene in his former client's personal

injury action to have his lien established, but must enforce it in an independent action]; and *Hendricks v. Superior Court* (1961) 197 Cal.App.2d 586 [17 Cal.Rptr. 364] [attorney's contingent fee contract gives him a lien on client's recovery, not a right to intervene in the personal injury action; compensation must be sought in an independent action]. According to *Valenta, Hansen, Bandy,* and *Hendricks,* a contractual lien for attorney fees must be enforced in an independent action by the attorney against the client and the attorney has no right to intervene in the main action to which he is not a party. Thus, any order or judgment granting the attorney fees made in the main action is in excess of the court's jurisdiction and is void.

However, neither *Valenta, Hansen, Bandy,* nor *Hendricks* involved application of section 3601, subdivision (a). Instead, as pointed out by the respondents in *Bell,* the cases involved adults, not minors. Thus, the *Bell* respondents cited to *Ojeda v. Sharp Cabrillo Hospital* (1992) 8 Cal.App.4th 1, 17 [10 Cal.Rptr.2d 230] and *Schneider v. Friedman, Collard, Poswall & Virga* (1991) 232 Cal.App.3d 1276, 1280, footnote 4 [283 Cal.Rptr. 882], and argued that because sections 3600 and 3601 and Code of Civil Procedure section 372 vest in the probate court exclusive jurisdiction to approve attorney fee requests in actions involving minors, the rule enunciated in the above referenced adult cases is inapplicable. We agree.

While the *Ojeda* and *Schneider* opinions do not specifically address the issue we are faced with here, these cases are instructive because of their reference to section 3600 et seq. *Ojeda* involved a medical malpractice action brought on behalf of a minor. The trial court granted an application for approval of a settlement and payment of attorney fees, but denied approval of the payment of a contractual fee to a medical-legal consulting firm. The contract between the consulting firm and the minor's guardian provided that the firm would be paid a contingent fee of 20 percent of the minor's total recovery in exchange for the firm's assistance in reviewing the medical records and locating expert witnesses. The trial court found the contingent fee contract with the consulting firm invalid.

The consulting firm appealed and the appellate court affirmed the trial court's order to the extent that it approved the compromise of the minor's claim and approved payment to the plaintiff's attorneys. However, to the extent the order denied payment of the consulting firm's fee, the appellate court reversed and remanded the matter. The court held that the trial court erred in finding that the consulting firm's contract was invalid simply because it was a contingent fee contract. It further found the contract to be enforceable; however, it directed the trial court to determine what portion, if any, of the fee charged by the consulting firm actually constituted a charge

for work that would normally be performed by an attorney. Such portion must be allocated as part of the maximum attorney fee allowable under the Medical Injury Compensation Reform Act.

In its discussion of attorney fees, the *Ojeda* court stated, "Although attorneys are ethically prohibited from charging an unreasonable or unconscionable fee [citations], courts normally do not inquire into reasonableness in the absence of an objection by the client. *An exception exists, however, where the lawyer represents a minor or incompetent person and recovers funds by way of a judgment or settlement. In such cases, the court must approve the payment of reasonable costs and fees.* (Prob. Code, §§ 3600 and 3601.)" (*Ojeda v. Sharp Cabrillo Hospital, supra,* 8 Cal.App.4th 1, 17, italics added.)

In *Schneider,* the former clients of a law firm which had successfully represented them in a medical malpractice action filed suit against the firm for their attorney fees incurred in defending against the firm's attempt to collect fees in excess of those to which an appellate court had determined the firm was entitled to receive under law. Once again, although our issue was not specifically addressed, the appellate court did reference a nonpublished opinion which concluded that the trial court has "exclusive jurisdiction to award attorney's fees pursuant to Probate Code section 3601." (*Schneider v. Friedman, Collard, Poswall & Virga, supra,* 232 Cal.App.3d 1276, 1280.)

When deciding the extent of the trial court's jurisdiction to consider an attorney claim for fees in an action, we must consider the type of action involved. If the action concerns the compromise of a minor's claim, the language in the statute (§ 3601, subd. (a)) is clear: the trial court is empowered to make an "order authorizing and directing that such reasonable expenses (medical or otherwise and including reimbursement to a parent, guardian, or conservator), costs, and attorney fees, as the court shall approve and allow therein" be paid out of the settlement proceeds. When presented with claims by more than one attorney in such action, each contending that he or she provided services at the direction of the minor's guardian, the trial court must decide the validity of each claim. In doing so, it may consider the evidence presented and determine a reasonable amount to be paid to each attorney. The attorneys are not required to file an independent action against the minor's guardian in order to obtain such determination.[10] To require the filing of such independent action misinterprets the language in section 3601, subdivision (a), and leads to an absurd result. That is precisely what *Goldberg* and *Bell* did, and why we decline to follow those opinions.

---

[10] We note that if there is a dispute between the attorneys vis-à-vis any contract entered into between the attorneys or any representations made between the attorneys which are not part of the contract entered into with the minor's guardian, the attorneys may have an

For the above reasons, we reject Bryant's challenge to the trial court's jurisdiction. Instead, we hold that the trial court properly interpreted section 3601, subdivision (a), and properly engaged in a determination of the reasonable amount of fees to be paid to both Bryant and Lloyd.

## SUFFICIENCY OF THE EVIDENCE

Having found that the trial court did have jurisdiction to award Lloyd his attorney fees, we now consider Bryant's contention that the amount awarded is not supported by substantial evidence. According to Bryant, it is undisputed that there was no evidence introduced to support the award" to Lloyd.

Turning to the record, we note that Lloyd filed his notice of lien for attorney fees and costs in June 1998. In August, he filed a brief regarding the allocation of legal fees wherein he provided copies of (1) the designation of attorney, (2) correspondence, and (3) summary of work performed and costs incurred. He further submitted two separate declarations outlining his involvement in the case. In addition to the documentation filed with the trial court, Lloyd appeared at the hearing to determine the allocation of attorney fees and argued the matter. While we find that Lloyd did provide evidence of the legal services he rendered regarding the accident which occurred on August 12, 1995, the record is unclear as to whether all of the services were for the benefit of the minor.

Although Lloyd acknowledges his representation of fellow passenger Clayton and claims that Clayton's injuries resolved in approximately three months postaccident, we note that Lloyd filed a lawsuit on behalf of Clayton in February 1996. Further, the action was not dismissed until August of that same year. When considering such evidence, Lloyd's declaration that he incurred costs in the amount of $2,283.36 which "would not have been incurred but for the instruction of MICHELLE JESSOP to immediately begin investigation and prosecution of [minor's] claim[,]" seems questionable. Moreover, the summary of the work he performed from September 1995 through spring 1996 contains work which was useful in his representation of minor and Clayton ("joint work"), thus suggesting it was used to the benefit of both clients. Nonetheless, there is no indication that Lloyd apportioned a percentage of the joint work to each client. Accordingly, we must reverse the order awarding attorney fees and remand the matter for a new hearing to determine the amount both Bryant and Lloyd should be awarded.

---

independent cause of action between themselves. (Cf. *Ojeda v. Sharp Cabrillo Hospital, supra,* 8 Cal.App.4th 1, 22.)

## DISPOSITION

The order awarding attorney fees is reversed and the matter is remanded for a new hearing. In all other respects, the judgment is affirmed. Each party is to bear its own costs on appeal.

McKinster, J., and Ward, J., concurred.